IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 6, 2015

**STATE OF TENNESSEE V. MICHAEL BAILEY**

**Appeal from the Criminal Court for Shelby County**
**No. 09-02888     James C. Beasley, Jr., Judge**

_____

**No. W2014-02517-CCA-R3-CD  -  Filed January 11, 2016**
_____

Michael Bailey ("the Defendant") was convicted by a jury of one count of aggravated robbery in case number 09-02888. At a subsequent sentencing hearing for case number 09-02888 and six other case numbers, the Defendant was sentenced as a repeat, violent offender to seven sentences of life without the possibility of parole. The trial ordered the Defendant's life without parole sentence in 09-02888 to run consecutively to one of the other life without parole sentences. On appeal, the Defendant argues that (1) the evidence was insufficient to support his conviction in case number 09-02888 and (2) the trial court abused its discretion when it ordered partial consecutive sentences. After a review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Lance R. Chism (on appeal) and Taylor Eskridge (at trial), Memphis, Tennessee, for the appellant, Michael Bailey.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy McEndree and Alanda Dwyer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

*Trial*

The Defendant was indicted in case number 09-02888 with one count of aggravated robbery.[1]  At trial, the victim, Lashanda Jones Hines,[2] testified that, on October 14, 2008, she picked up one of her sons from school, made a trip to the grocery store, and returned home at approximately 3:30 or 4:00 p.m.  When Mrs. Jones pulled into her apartment complex, she saw a man, whom she later identified as the Defendant, sitting on a wall near the driveway. She assumed he was "a neighbor or someone in the apartment complex next to [hers]."  Mrs. Jones parked her car and began to unload her grocery bags while her son exited the car.  When Mrs. Jones turned around, the Defendant was standing in front of her with a gun.  Mrs. Jones told her son to run, and her son obeyed.  Mrs. Jones explained that she could see the Defendant clearly because the Defendant did not have his face covered and he was standing within arm's reach. Mrs. Jones described the gun, stating, "It was a black gun, kind of reminded me like a BB gun or something but it was a black metal gun."  She said the gun looked real and that she was scared.  The Defendant then said, "Give me your keys before I kill you."  Mrs. Jones dropped everything she was carrying.  The Defendant picked up Mrs. Jones's keys and her purse and drove away in her car.  Mrs. Jones then went into her apartment, told her husband what happened, and called the police.

Sometime later, the police came to Mrs. Jones's apartment to show her a photo lineup.  Mrs. Jones identified the photo of the man who robbed her and wrote, "He walked up behind me while I was getting groceries out of my car and he pulled a gun on me and said give me your keys before I kill you.  He took my car and purse and drove off."  Mrs. Jones identified the Defendant as the man who robbed her.

On cross-examination, Mrs. Jones recalled that she viewed the photo lineup about six weeks after the robbery.  Additionally, the following exchange occurred:

Q:  Now you indicated that you thought it was a BB gun.

A:  No, I said it reminded me of a BB gun.

---

[1] It appears that the Defendant initially entered a guilty plea in case number 09-02888, along with several other case numbers.  However, the Defendant withdrew his plea and proceeded to trial in case number 09-02888.

[2] The victim is identified as Lashanda Jones in the indictment.  To be consistent with the indictment, we will refer to her as Mrs. Jones in this opinion.

Q: Okay. What reminded you of a BB gun?

A: The gun, the black. It was a black metal gun. The only reason I know my dad used to have a black BB gun and it kind of—that's the only thing I could kind of compare it to.

On redirect examination, Mrs. Jones explained that she followed the Defendant's commands because she did not want him to hurt her or her son.

Memphis Police Department ("MPD") Officer Takella Gates testified that she arrested the Defendant approximately two months after the date of the offense. At the time he was arrested, the Defendant had a "black travel bag" and a "black handgun" in his possession.

MPD Lieutenant Myron Fair testified that he took the Defendant's statement after the Defendant was arrested. In an oral statement, the Defendant admitted that he "approached [Mrs. Jones], pulled a handgun, [and] asked for her keys and purse." In a subsequent written statement, the Defendant admitted that he robbed Mrs. Jones of her car, phone, and credit cards and stated:

> I saw a female black pull into the complex and park. When she opened her door, I approached her and pointed the black air pistol at her and said ["]give me your damn car.["] I snatched her out. She had a four-year-old son who was already outside the car and he took off and ran. I got in the car and went to Covington, Tennessee.

The Defendant explained that he committed the robbery so he could "get some money so [he] could support [his] drug habit." The day after the Defendant provided his statement, Lieutenant Fair showed Mrs. Jones a photo lineup, and Mrs. Jones identified a photo of the Defendant as that of the man who robbed her.

Following deliberations, the jury convicted the Defendant of aggravated robbery.

### Sentencing Hearing

At the sentencing hearing for case number 09-02888, the trial court also sentenced the Defendant in case numbers 09-02887, 09-02889, 09-02890, 09-02891, 09-02892, and 09-02893.[3] At the hearing, the State noted that the Defendant qualified as a "three strikes" defendant under Tennessee Code Annotated section 40-35-120(g) and the law required the trial court to impose sentences of life without the possibility of parole.

---

[3] In each of these case numbers, the Defendant entered guilty pleas to aggravated robbery. In case number 09-02887, the Defendant also entered a guilty plea to aggravated assault.

Additionally, the State asked the trial court to impose consecutive sentencing for one or more of the Defendant's convictions. The Defendant conceded that he had "three strikes" and that a sentence of life without the possibility of parole was appropriate. However, the Defendant argued that consecutive sentences were not necessary to avoid depreciating the seriousness of the offenses and asked the court to order concurrent sentences.

The trial court considered the principles and purposes of sentencing as laid out in Tennessee Code Annotated section 40-35-102. Additionally, the trial court stated that it had considered the testimony presented at trial and the presentence report. The trial court found that the Defendant was "a career offender for the offense of aggravated robbery." Additionally, the trial court found that the Defendant had a prior history of violent crimes stretching back to 1993, including nineteen prior aggravated robbery convictions and three theft convictions. Consequently, the trial court sentenced the Defendant as a career, repeat violent offender to life without the possibility of parole in case number 09-02888.[4] Additionally, the trial court found that the Defendant had pleaded guilty to aggravated robbery in the six other case numbers and sentenced the Defendant as a career, repeat violent offender to life without the possibility of parole in each of those cases.[5]

The trial court commented that the Defendant's criminal record "may be the longest and most extensive record of aggravated robbery that I have seen in my forty-odd years of working in the criminal justice system." The trial court found that the Defendant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood; the Defendant's record of criminal activity was extensive; the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. Additionally, the trial court found that the circumstances surrounding the commission of the offense were aggravated; confinement for an extended period of time was necessary to protect society from the Defendant; and the aggregate length of the sentences was reasonably related to the offense of which the Defendant stood convicted. Consequently, the trial court ordered that the sentence for case number 09-02888 be served consecutively to case number 09-02889. The remaining sentences were ordered to be served concurrently.

The Defendant then filed an untimely motion for new trial, which was denied. Next, the Defendant filed an untimely notice of appeal. Subsequently, this court entered an order granting trial counsel's motion to withdraw and appointing appellate counsel to represent the Defendant. Appellate counsel then filed a motion asking this court to waive

---

[4] See Tenn. Code Ann. § 40-35-120(g) (2010).

[5] The trial court sentenced the Defendant to fifteen years as a career offender for his conviction of aggravated assault in case number 09-02887.

the timely filing of the notice of appeal in the interest of justice pursuant to Rule 4(a) of the Tennessee Rules of Appellate Procedure.  This court granted the waiver.

## Analysis

### *Sufficiency of the Evidence*

The Defendant argues that the evidence was insufficient to support his conviction for aggravated robbery because no reasonable juror could have concluded that the Defendant used a deadly weapon because he used an air pistol or conclude that Mrs. Jones reasonably believed the Defendant had a deadly weapon because she testified that the gun reminded her of a BB gun.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e).  Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded on other grounds by Tenn. R. Crim. P. 33 as stated in State v. Moats, 906 S.W.2d 431, 434 n.1 (Tenn. 1995).  This court will not reweigh the evidence.  Id.  Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt.  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  The defendant bears the burden of proving why the evidence was insufficient to support the conviction.  Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914.  On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom."  State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear."  Tenn. Code Ann. § 39-13-401 (2006).  As charged in the indictment, aggravated robbery is a robbery that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]"  Tenn. Code Ann. § 39-13-402(a)(1) (2006).

In this case, there was ample evidence for the jury to conclude that Mrs. Jones reasonably believed that the Defendant's gun was real and therefore a deadly weapon.

The Defendant approached Mrs. Jones from behind, pointed the "air pistol" at her, and demanded, "Give me your keys before I kill you." Mrs. Jones testified that the Defendant pointed a black, metal gun at her and that the gun looked real. She stated that it reminded her of a BB gun because she had seen her father's BB gun and that was the only item to which she could compare the Defendant's gun. Mrs. Jones also testified that she was scared the Defendant would hurt her or her son and that she dropped everything she was holding in order to protect herself. Any rational juror could have concluded that Mrs. Jones reasonably believed that the Defendant's gun was a deadly weapon. The Defendant is not entitled to relief on this issue.[6]

*Consecutive Sentencing*

The Defendant argues that the trial court abused its discretion when it ordered that the sentence for case number 09-02888 be served consecutively to case number 09-02889. While the Defendant concedes that the trial court correctly found that the Defendant had an extensive criminal record, he contends that the imposition of two consecutive life sentences was not "justly deserved in relation to the seriousness of the offense" and that it was "greater than that deserved for the offense committed." See Tenn. Code Ann. §§ 40-35-102(1), -103(2) (2014). The State argues that the Defendant has failed to overcome the presumption of reasonableness. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2014); Bise, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2014), Sentencing Comm'n Cmts.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and

---

[6] Because the evidence supports the conclusion that Mrs. Jones reasonably believed that the Defendant's "air pistol" was a deadly weapon, we need not address the Defendant's argument that the air pistol was not a deadly weapon as defined in Tennessee Code Annotated section 39-11-106(a)(11) (2006).

characteristics of the criminal conduct involved; (5) the evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2014).

In State v. Pollard, the Tennessee Supreme Court expanded its holding in Bise to trial courts' decisions regarding consecutive sentencing. State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013). In order for the presumption of reasonableness to apply to the trial court's discretionary authority to impose consecutive sentences, the trial court must provide "reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" Id. at 861. Any one of the grounds listed in that statute "is a sufficient basis for the imposition of consecutive sentences." Id. at 862. However, before a trial court imposes consecutive sentences based on the ground that the defendant is a dangerous offender, see Tenn. Code Ann. § 40-35-115(b)(4), the trial court must also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

In this case, the Defendant acknowledges that the trial court found that the Defendant had an extensive criminal record; that he was a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high; and that he was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood. See Tenn. Code Ann. § 40-35-115(1), (2), (4) (2014). Additionally, the Defendant concedes that the trial court made the requisite Wilkerson findings. However, the Defendant maintains that the imposition of two consecutive life sentences was not justly deserved in relation to the seriousness of the offense. To support this claim, he notes that he used an "air pistol" in the commission of the crime, no one was injured during the robbery, that he confessed to the crime, and that he told police he had committed the robbery in order to support his drug habit. Additionally, the Defendant contends that consecutive sentencing was not necessary because he is already serving a life sentence without the possibility of parole in the present case.

We appreciate the Defendant's contention that consecutive sentencing seems redundant in light of the fact that he was already sentenced to seven sentences of life

without the possibility of parole.  Nevertheless, we are unable to say that the trial court abused its discretion in imposing partial consecutive sentences in this case.  The trial court thoroughly examined the Defendant's criminal history and the nature of the offense and placed its reasons for ordering consecutive sentences on the record.  Further, the trial court explicitly stated that it had considered the principles and purposes of sentencing and found that the aggregate length of the sentences was reasonably related to the seriousness of the offense.  The Defendant is not entitled to relief.

## Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.


_____
ROBERT L. HOLLOWAY, JR., JUDGE